UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PERRY T. CHRISTY,

        Plaintiff,                           Civil Action No. 10-cv-12585

    v.                                  District Judge Nancy Edmunds
                                        Magistrate Judge Laurie J. Michelson

CHEVRON CORPORATION, a Delaware corporation
and MELLON INVESTOR SERVICES LLC, a New
Jersey limited liability company,

        Defendant.
_____/

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [27, 29]**

      Plaintiff Perry Christy and Defendants Chevron Corporation and Mellon Investor Services LLC have all filed summary judgment motions under Fed. R. Civ. P. 56(a), (Dkts. 27, 29) which are presently before this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), (Dkts. 12, 30). The Court finds that the facts and legal arguments pertinent to the Motions are adequately presented in the parties' papers and thus, will dispense with oral argument pursuant to E.D. Mich. Local R. 7.1(f).

**I. RECOMMENDATION**

      For the reasons set forth below, this Court finds the doctrine of laches bars Plaintiff's breach of contract claim as a matter of law. The Court further finds that genuine issues of material fact preclude Plaintiff's motion for summary judgment. Accordingly, this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED, Defendants' Motion for Summary Judgment be GRANTED, and the case be DISMISSED with PREJUDICE.

## II. REPORT

### A. Procedural History

Plaintiff alleges that on June 30, 2004, he purchased $100,000.00 of Chevron common stock online. (Dkt. 27, Pl.'s Mot. Summ. J. at 2.) It is undisputed that on this date, Plaintiff received an enrollment confirmation indicating that he had enrolled in the "CHEVRONTEXACO CORPORATION stock plan." (Dkt. 29, Defs.' Mot. Summ. J. at Ex. 3.) On this same date, ChevronTexaco sent Plaintiff a document via Mellon Investor Services indicating: "Your shares of ChevronTexaco Corporation common stock have been entered on our books. To verify our records, please review and complete this form and return it in the enclosed envelope." (*Id*. at Ex. 4.) Plaintiff does not recall if he completed and returned this form. (*Id.* at Ex. 2, pp. 51-52.)

In August of 2004, Plaintiff received and reviewed his bank statement, and realized there was no debit to his account for his alleged stock purchase. (Dkt. 29, Defs.' Mot. Summ. J. at Ex. 1, p. 60-61.) There is some question as to what Plaintiff did in response to this discovery, but it is undisputed that, one year later, on or about September of 2005, Plaintiff inquired into the alleged purchase. (*Id*. at Ex. 7.) On September 9, 2005, Defendant Mellon Investor Services ("MIS") sent Plaintiff a letter indicating:

> Please be advised that due to an extended lapse in time between the incident and date reported, we can not determine the exact root cause of this error. If you would like to proceed with purchasing shares for the above mentioned company you may access your account online to process your request.

(*Id*.)

In response to this letter, Plaintiff, on September 21, 2005, sent a letter to Defendant MIS on behalf of the Thomas P. Christy Trust with a $100,000 check requesting to purchase shares at the June 30, 2004 stock price:

> While we understand its importance to Mellon Investor Services and

> its relations with Chevron, for us the issue is not whether you can "determine the exact root cause of this error," but what you have done to correct it.
>
> We have a confirmation 308S13808K of a purchase under the plan dated June 30, 2004. We expect you to correct our account as of that date, crediting the trust with the shares that the $100,000 which I authorized you to draw on our bank on that date would have purchased together with the shares that would have been purchased with the reinvested dividends which the initial purchase would have bought, all in accordance with the plan to which we subscribed.
>
> We speculate that the root cause of this error also leaves you without information to complete the draw, so I am enclosing our check in the sum of $100,000. The previous authority to draw that sum on the account is revoked.

(*Id.* at Ex. 8.)

Defendant MIS responded on October 4, 2005, refusing Plaintiff's request:

> Unfortunately we are unable to process your request to have the $100,000 check invested as of the June 30, 2004 price. If it is your intention to purchase Chevron Corporation shares we can do so as of the next investment date once we have received your request along with a check or money order.

(*Id.* at Ex. 9.) MIS returned the $100,000 check. (*Id.*)

Plaintiff did not communicate with Defendants again until almost five years later on May 3, 2010. (*Id.* at Ex. 10.) On that date, Plaintiff e-mailed Defendant Chevron regarding his June 30, 2004 purchase. (*Id.*) On May 9, 2010, Vice President & Senior Relationship Manager Joshua P. McGinn of Defendant MIS wrote to Plaintiff indicating that Defendants could not allow Plaintiff to purchase Chevron stock at its June 30, 2004 price:

> I have researched your request as best as I can and have even interviewed Ms. Tallasken who was involved with your original inquiry back in September of 2005. From the notes pertaining to your case back in 2004-2005, it appears that your account profile was created but the bank draft was unsuccessful. As the terms of the Plan are subject to funds availability, the purchase of Chevron stock was not completed for your account. I regret that due to the time lapse

>> involved, I am unable to recover any details such as Automated Clearing House transmissions, electronic messaging or coding.

(*Id.* at 11.)

Plaintiff filed this breach of contract suit on June 20, 2010 – a few days before the running of the applicable six-year statute of limitations – alleging the following:

> 8. Defendants have breached their contract with plaintiff in multiple ways, including but not limited to:
>
>> a.   failing to enter plaintiff's ownership of any of the shares of Chevron Corporation on the books of the corporation;
>>
>> b.   failing to render its duties to plaintiff as a shareholder since June 30, 2004 . . . ;
>>
>> c.   failing to credit plaintiff's account with stock and cash dividends since June 30, 2004 and to reinvest the cash dividends in Chevron Corporation shares as the parties agreed on June 30, 2004.
>
> 9. With stock and reinvested cash dividends, plaintiff is now entitled to upwards of 2,567 shares of Chevron Corporation common stock.

(Dkt. 1, Pl.'s Compl., ¶¶ 8-9.) Following discovery, all parties moved for summary judgment. (Dkts. 27, 29.)

### B. Standard of Review

Summary judgment is proper if the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the moving party must prevail as a matter of law. *Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

### C. Laches

Defendants contend that Plaintiff's claims are barred by the doctrine of laches. They argue that Mr. Christy realized by August 2004 at the latest that his June 2004 attempt to purchase Chevron stock had failed, yet did nothing more than exchange a pair of letters with MIS and perhaps make some phone calls in the following year, and then waited another five years to see how the stock performed before bringing his claim. (Def. Summ. J. Br. at ECF 12, 14.)

Laches is an affirmative defense which depends not merely upon the lapse of time but principally on the requisite of intervening circumstances which would render inequitable any grant of relief to the dilatory plaintiff. *Lewis v. Poel*, 376 Mich. 167, 169, 136 NW2d (1965); *Root v. Republic Ins*. Co., 82 Mich. App. 446; 266 N.W.2d 842 (1978). The Sixth Circuit and Michigan Courts have different standards with regard to laches. *See Elvis Presley Enterprises v. Exclusively Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991); *Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 365-66 (6th Cir. 1985), *cert. denied*, 476 U.S. 1158 (1986); *Tenneco Inc. v. Amerisure Mutual Ins. Co.*, 281 Mich. App. 429, 456 (Mich. Ct. App. 2008). In the Sixth Circuit:

> Laches is the "negligent and unintentional failure to protect one's rights." A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it. In this Circuit, there is a strong presumption that a plaintiff's delay in asserting its rights is reasonable as long as an analogous state statute of limitations has not elapsed.

*Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 408 (6th Cir. 2002) (citations omitted).

Under Michigan law, however, there is no such presumption. *See Tenneco Inc. v. Amerisure Mutual Ins. Co.*, 281 Mich. App. 429, 456 (Mich. Ct. App. 2008.) Indeed, the affirmative defense of laches will *only* apply if the analogous state statute of limitations has *not* lapsed. *Id.* In other words, under Michigan law, the application of laches "can shorten, but never lengthen, the analogous period of limitations." *Id.* (citations omitted).

Because jurisdiction in this case is based on diversity, the Court, in ruling on these motions, must apply the substantive law of Michigan. *Erie R.R. v. Tomkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188 (1938); *see also Gasperini v. Ctr. For Humanities*, 518 U.S. 415, 427, 116 S. Ct. 2211 (1996) ("Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law.").[1] Thus, the fact that Plaintiff brought this suit within the statute of limitations does not preclude the application of laches to bar his claim as a matter of law. *See, e.g., Case v. Goren,* 43 Mich. App. 673; 204 N.W.2d 767 (Mich. Ct. App. 1972) (applying laches after unjustified three-and-one-half year delay, where analogous statute of limitations was six years).

Under Michigan law, for one to successfully assert the defense of laches, it must be shown that there was a passage of time combined with some prejudice to the party asserting the defense. *Head v. Benjamin Rich Realty Co.*, 55 Mich. App. 348, 356 (Mich. Ct. App. 1974), *lv. den*. 393

---

[1] The Court must also apply the forum state's choice-of-law rules. *Equitable Life Assurance Soc. of U.S. v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1998). The parties do not dispute, however, that Michigan law applies. (Dkt. 27, Pl.'s Mot. Summ. J.; Dkt.; Dkt. 29, Defs.' Mot. Summ. J.)

Mich. 792 (1975); *see also Wiljamaa v. Board of Education of City of Flint*, 50 Mich. App. 688, 692; 213 N.W.2d 830 (1973). Laches is concerned mainly with the question of the inequity of permitting a claim to be enforced and depends on whether the plaintiff has exercised due diligence. *Sloan v. Silberstein*, 2 Mich. App. 660, 676; 141 N.W. 2d 332 (1966). A few Michigan cases are particularly instructive.

In the *City of Jackson v. Thompson-McCully Co., LLC*, the Michigan Court of Appeals analyzed a state trial court's application of laches to plaintiffs' challenges to the zoning of certain land. 239 Mich. App. 482, 492 (Mich. Ct. App. 2000). Specifically, in 1987 the defendant purchased certain land zoned as "light industrial" for the construction of an asphalt plant. *Id*. at 494. Plaintiffs sued prior to the expiration of the analogous statute of limitations to invalidate the zoning in 1998, "after defendant purchased the property and had proceeded with plans for the plant." *Id*. The Michigan Court of Appeals held that laches applied to bar the suit. The Court reasoned that there was a significant passage of time – nearly ten years – and prejudice to the defendant – the expenditure of $370,000 for the land in 1987 and $160,000 in improvements in 1994 and 1995. *Id*.

Likewise, in *Case v. Goren*, the Michigan Court of Appeals again barred a plaintiff's action through application of the doctrine of laches. 43 Mich. App. 673; 204 N.W.2d 767 (Mich. Ct. App. 1972.) In that case, plaintiff sought rescission of a contract procured by fraud. *Id*. at 675. Specifically, on March 17, 1967, plaintiff entered into a contract with defendant for the purchase of stock in defendant's company based on fraudulent misrepresentations by defendant. *Id*. Plaintiff discovered the fraud as of March 31, 1967. *Id*. at 676. However, plaintiff did not file his complaint until three years later. *Id*. The Court affirmed the trial court's ruling "that plaintiff delayed bringing his cause of action sufficiently to invoke the equitable doctrine of laches." *Id*. at 769. The Court reasoned that plaintiff waited three and a half years to file suit with "no extenuating circumstances

explaining this delay." *Id*. The Court went on to state that "Plaintiff appears to have shifted the risk of investment onto [Defendant], participating in the profits had [Defendant] been financially successful, yet reserving the right to rescind in the event that financial setbacks were suffered." *Id*.

### D. The Doctrine of Laches Bars Plaintiff's Claim as a Matter of Law

Applying this Michigan case law here, the Court finds that Plaintiff's breach of contract action is barred as a matter of law by the doctrine of laches. The undisputed record reveals a significant passage of time between Plaintiff's discovery of the error with regard to his alleged stock transaction and this suit resulting in prejudice to the Defendants. *Head*, 55 Mich. App. 348, 356; *see also Wiljamaa*, 50 Mich. App. 688, 692.

First, Plaintiff discovered that $100,000 had not been debited from his bank account to complete the alleged stock transaction in August of 2004. (Dkt. 29, Defs.' Mot. Summ. J. at Ex. 1, p. 60-61.) There is some question as to what Plaintiff did in response to this discovery prior to September of 2005, but it is undisputed that on or about September of 2005, Plaintiff inquired into the alleged purchase. (*Id*. at Ex. 7.) Indeed, on September 9, 2005, Defendant Mellon Investor Services sent Plaintiff a letter acknowledging that there was some "error" with regard to Plaintiff's attempt to purchase stock. (*Id*.) Less than a month later, on October 4, 2005, after Plaintiff had tendered a $100,000 check to MIS, Plaintiff was advised by MIS that "[u]nfortunately we are unable to process your request to have the $100,000 check invested as of the June 30, 2004 price." (*Id*. at Ex. 9.) In order to satisfy the due diligence requirement of *Case v. Goren*, Plaintiff needed to "obtain redress promptly, or within some reasonable time after discovery" of this error. *Id*. However, Plaintiff did not file suit until June 30, 2010 – almost five years later.[2] (Dkt. 1, Pl.'s

---

[2] In *Case*, Plaintiff filed his claim three and a half years after his discovery of fraud and was still found guilty of laches. 43 Mich. App. at 679.

Compl.) Plaintiff does not offer any reason for this five-year delay and admitted at his deposition that "the only reason I brought suit is because at some point in time someone was going to raise the issue, if not of the statute of limitations, of some sort of laches or whatever and I'm getting older." (Dkt. 29, Defs.' Mot. Summ. J. at Ex. 1, pp. 67-68.) By waiting years to see how the stock would perform, Plaintiff unreasonably delayed the filing of his claim.

This delay prejudiced Defendants. In June 2004, at the time of the alleged contracting, Christy's $100,000 payment would have purchased $100,000 worth of Chevron stock. Because Chevron's stock price declined shortly thereafter, at the time Christy learned that his purchase had failed, he could have then purchased the same number of shares as he had originally desired at a lower price. By waiting almost six years to bring this lawsuit seeking 2,567 shares of Chevron stock (Dkt. 1, Ex. B at ¶ 9) at the original purchase price – with a current stock price of about $100 per share – Plaintiff would receive approximately $260,000 worth of stock for $100,000 – i.e., Defendants would lose approximately $160,000. *See Lake Caryonah Improvement Ass'n v. Pulte Home Corp.,* 903 F.2d 505, 510 (7th Cir. 1990) (explaining that prejudice may be established "when there is a marked appreciation or depreciation in the value of the property"). As in *Case*, Plaintiff "appears to have shifted the risk of his investment onto [Defendant Chevron]" avoiding losses if Defendant had "financial setbacks" but "participating in the profits" upon its success. It is notable that in *Case*, the plaintiff's claim was barred by laches even though the defendant perpetrated a fraud on the plaintiff. *Id.* at 669-70. By contrast here, Defendants, at most, made an error. (Dkt. 29, Defs.' Mot. Summ. J. at Ex. 7.) Plaintiff shifted the risk of his investment onto Defendants by not promptly filing suit with respect to this error. Therefore, Plaintiff's breach of contract claim is barred by laches and Defendants are entitled to summary judgment.

### E. Summary Judgment in Plaintiff's Favor is Not Warranted

Even if the case was not barred by laches, summary judgment in Plaintiff's favor is not warranted. There are several genuine issues of material fact on Plaintiff's breach of contract claim, including: 1) Whether the enrollment confirmation received by Plaintiff indicating that he had enrolled in the "CHEVRONTEXACO CORPORATION stock plan" was a receipt for a purchase of $100,000 in Chevron common stock or simply a confirmation of the creation of an account profile; 2) Whether Defendant MIS's document asking for verification of Plaintiff's "purchase" was a condition precedent to the actual purchase of stock or was an admission of the alleged purchase; and 3) Whether it was reasonable for Plaintiff to assume he purchased $100,000 in Chevron common stock when that amount was not debited from his bank account.

### G. Conclusion

For the reasons set forth above, this Court finds the doctrine of laches bars Plaintiff's claim as a matter of law and thus RECOMMENDS that Defendant's Motion for Summary Judgment be GRANTED and the case be DISMISSED with PREJUDICE. If the District Court does not adopt this portion of the Recommendation, this Court further finds that there are genuine issues of material fact on Plaintiff's breach of contract claim and thus further RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED.

### III. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections,

but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97.  A copy of any objections is to be served upon this magistrate judge.  E.D. Mich. LR 72.1(d)(2).  Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response.  E.D. Mich. LR 72.1(d)(3), (4).

S/Laurie J. Michelson
Laurie J. Michelson
United States Magistrate Judge

Dated: September 2, 2011

### PROOF OF SERVICE

The undersigned certifies that the foregoing document was served upon the parties and/or counsel of record via the Court's ECF System and/or U. S. Mail on September 2, 2011.

s/Jane Johnson
Case Manager to
Magistrate Judge Laurie J. Michelson